UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| RADIO SYSTEMS CORPORATION, | ) | |
|---|---|---|
| Plaintiff/Counter-Defendant, | ) | |
| v. | ) | No.: 3:09-CV-481 |
| | ) | (VARLAN/SHIRLEY) |
| ACCESSION, INC., | ) | |
| Defendant/Counter-Claimant. | ) | |

**MEMORANDUM OPINION**

This civil action is before the Court on defendant Accession, Inc.'s Motion to Dismiss, or in the Alternative, Defendant/Counter Plaintiff's Motion to Transfer [Doc. 12], in which defendant requests dismissal of this case for lack of personal jurisdiction or, in the alternative, that the case be transferred to the United States District Court for the District of New Jersey. Plaintiff Radio Systems Corporation has filed a response in opposition to this motion [Doc. 15]. Defendant has filed a reply to the response [Doc. 18].

The motion to dismiss or transfer is now ripe for this Court's consideration.

**I.    Background**

Plaintiff filed the complaint in this case on November 5, 2009 [Doc. 1]. In the complaint, plaintiff alleges as follows: plaintiff is a Delaware corporation having its principal place of business in Knoxville, Tennessee [*Id.*, ¶ 1]. Defendant is a New Jersey corporation having its principal place of business in Hamilton, New Jersey [*Id.*, ¶ 2]. Defendant is the

owner of record of United States Patent Number 7,207,141 (the "'141 patent"), which generally discloses a sliding door insert for a portable pet portal [*Id.*, ¶ 6].

In or about 2005, plaintiff began development of a selective access electronic pet door system [*Id.*, ¶ 7]. This pet door system was ultimately introduced and sold to consumers in 2009 as the PetSafe® SmartDoor [*Id.*]. On November 26, 2006, defendant sent an unsolicited letter to plaintiff in Tennessee, seeking to interest plaintiff in defendant's sliding door insert, and to establish a business relationship with plaintiff to produce and sell this sliding door insert [*Id.*, ¶ 8]. Plaintiff did not respond to this letter [*Id.*]. On January 2, 2007, defendant sent a second unsolicited letter to plaintiff in Tennessee, again seeking to interest plaintiff in defendant's sliding door insert, and to establish a business relationship with plaintiff to produce and sell this sliding door insert [*Id.*].

In February of 2007, plaintiff responded by email to defendant's January 2, 2007 letter, asking for the number of the patent covering defendant's sliding door insert [*Id.*, ¶ 9]. On February 4, 2007, defendant responded by email, advising plaintiff that no patent had issued, but providing the number of the pending patent application [*Id.*]. Plaintiff did not respond to this email, or otherwise seek a business relationship with defendant at this time [*Id.*]. On June 14, 2007, defendant again sent an email to plaintiff in Tennessee seeking to establish a business relationship with plaintiff involving defendant's sliding door insert [*Id.*, ¶ 10]. The parties continued to communicate with each other during the rest of 2007 [*Id.*]. Plaintiff nevertheless chose not to enter into an agreement with defendant at that time [*Id.*].

On February 14, 2009, defendant again sent an email to plaintiff in Tennessee seeking to establish a business relationship with plaintiff involving defendant's sliding door insert [*Id.*, ¶ 11]. Plaintiff agreed to meet with a representative from defendant corporation in order to permit the representative to demonstrate the functionality of defendant's sliding door insert [*Id.*]. The president of defendant corporation, Thomas Sullivan, thereafter came to Knoxville and met with a representative of plaintiff corporation [*Id.*]. No agreement regarding the sliding door insert was reached at that time [*Id.*].

In or around August 2007, plaintiff's PetSafe® SmartDoor was introduced to the public [*Id.*, ¶ 12]. On August 20, 2009, defendant's legal counsel contacted plaintiff's counsel by telephone, and informed him that the PetSafe® SmartDoor infringes the '141 patent [*Id.*, ¶ 13]. Subsequent letters from defendant's counsel to plaintiff's counsel repeated this infringement assertion, and further asserted a willingness to pursue litigation in connection with this alleged infringement [*Id.*]. Plaintiff communicated to defendant its position that the PetSafe® SmartDoor does not infringe any claims of the '141 patent [*Id.*, ¶ 14]. Plaintiff alleges, however, that "the issue remains in dispute," and that plaintiff "has a reasonable fear and apprehension that patent infringement litigation will be brought against it relating to the '141 patent" [*Id.*].

On the basis of these allegations, plaintiff seeks a declaratory judgment of non-infringement and/or invalidity of United States Patent Number 7,207,141 [*Id.*, ¶¶ 15-20]. On March 30, 2010, defendant filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer this case to the United States District Court for the District of

New Jersey [Doc. 12]. Plaintiff filed a response in opposition to the motion to dismiss on April 22, 2010 [Doc. 15]. Defendant filed a reply to the response on April 28, 2010 [Doc. 18].

The Court has carefully considered the motion to dismiss or transfer, the response, and the reply in light of the applicable law. For the reasons that follow, the motion to dismiss will be granted to the extent that this case will be dismissed for lack of personal jurisdiction.

**II.     Standard of Review**

Federal Rule of Civil Procedure 8(a) sets out a liberal pleading standard. To survive a motion to dismiss, a pleading need contain only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. A formulaic recitation of the elements of a cause of action will not do. *Id.* Nor will an "unadorned, the-defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A pleading must instead "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1937.

**III.     Analysis**

As noted, defendant has filed a motion to dismiss for lack of personal jurisdiction [Doc. 12]. Defendant has moved in the alternative to transfer this case to the United States District Court for the District of New Jersey [*Id.*]. Plaintiff argues in response that this Court may exercise personal jurisdiction over defendant [Doc. 15]. Plaintiff argues further that transferring this case would be inappropriate [*Id.*]. The Court considers these arguments below.

**A.     Personal Jurisdiction**

In order for a district court to have personal jurisdiction over a party to a suit who is not present in the forum State, the party must have "minimum contacts" with the forum State such that maintaining the suit would not "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "The critical question minimum-contacts analysis seeks to answer is whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). A federal court determines whether personal jurisdiction exists over a nonresident defendant by applying the law of the State in which it sits. *WEDGE Group, Inc.*, 882 F.2d at 1089.

The due process limitations on the exercise of personal jurisdiction command a distinction between "general" jurisdiction and "specific" jurisdiction. "In a case of general

5

jurisdiction, a defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Id.* "In a specific jurisdiction case," by contrast, "'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

The Court notes the lack of a dispute between the parties that this Court may not exercise general personal jurisdiction over defendant in this case. *Compare* Doc. 12 ("To establish general jurisdiction, [plaintiff] must show that [defendant] has had 'continuous and systematic' contacts with the forum [S]tate . . . [plaintiff] has made no such showing, nor did it attempt to do so.") *with* Doc. 15 (restricting discussion to specific personal jurisdiction). This Court thus limits its discussion to whether it may exercise specific personal jurisdiction over defendant.

In a specific jurisdiction case, the Court must engage in a two-step process. First, it must determine whether any of Tennessee's relevant long-arm statutes authorizes the exercise of jurisdiction over the nonresident defendant. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). If so, the Court must then determine whether the exercise of that jurisdiction comports with constitutional due process. *Id.* Tennessee's long-arm statute provides that persons who are nonresidents of Tennessee are subject to the jurisdiction of Tennessee courts as to any action or claim for relief arising from any tortious act in Tennessee. Tenn. Code. Ann. § 20-2-214. The Tennessee long-arm

statute extends "to the full limit allowed by due process." *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985). The relevant Tennessee long-arm statute thus authorizes the exercise of jurisdiction over defendant, provided that such exercise comports with due process.

As for the due process inquiry, the Court notes that "the issue of personal jurisdiction in a declaratory action for non-infringement is 'intimately related to patent law' and [is] thus governed by Federal Circuit law regarding due process." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006) (quoting *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003)). To determine whether specific personal jurisdiction may be exercised in such an action, a "court must inquire whether the defendant has 'purposefully directed his activities' at the forum state and, if so, whether 'the litigation results from alleged injuries that arise out of or relate to those activities.'" *Breckenridge Pharm., Inc.*, 444 F.3d at 1361-62 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "Then, to defeat jurisdiction, the burden of proof shifts to the defendant, which must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Breckenridge Pharm., Inc.*, 444 F.3d at 1362 (quoting *Burger King Corp.*, 471 U.S. at 476-77).

In this case, the Court finds that, even if the defendant has "purposefully directed" its activities at Tennessee, the litigation does not result from alleged injuries that "arise out of" or "relate to" those activities. As the Federal Circuit has explained, "the nature of the claim in a declaratory judgment action is 'to clear the air of infringement charges.'" *Avocent*

7

*Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (citing *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)). "Such a claim neither directly arises out of nor relates to the . . . offering to sell . . . of arguably infringing products in the forum." *Avocent Huntsville Corp.*, 552 F.3d at 1332. The claim "instead arises out of or relates to the activities of the defendant patentee in enforcing the patent . . . in suit." *Id.* In these cases, "[t]he relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,'" as well as "the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'" *Id.* (quoting *Breckenridge Pharm., Inc.*, 444 F.3d at 1363).

In the present case, the only enforcement-related contacts plaintiff alleges that defendant made with Tennessee are the phone call defendant's counsel placed to plaintiff's counsel asserting infringement on August 20, 2009, and the letters from defendant's counsel to plaintiff's counsel on September 1, 2009 and September 23, 2009 reasserting this infringement claim [*see* Doc. 1, ¶ 13; Doc. 15]. "[M]ere threats of infringement directed at the forum state," however, "are not sufficient to satisfy due process requirements when exercising jurisdiction over an out-of-state patentee." *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351 (Fed. Cir. 2003) (citing *Red Wing Shoe Co., Inc.*, 148 F.3d at 1361).[1]

---

[1] This "rule is based on a policy judgment that '[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *The Campbell Pet Co. v. Miale*, 542 F.3d 879, 885 (Fed. Cir. 2008) (quoting *Red Wing Shoe Co.*, 148 F.3d at 1361).

8

"Rather, 'other activities' distinct from threats of infringement are required for a patentee to be subject to personal jurisdiction in the forum." *Electronics for Imaging, Inc.*, 340 F.3d at 1351 (citing *Silent Drive, Inc.*, 326 F.3d at 1202).

"Examples of these 'other activities' include initiating judicial or extrajudicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Avocent Huntsville Corp.*, 552 F.3d at 1332 (citing cases). Plaintiff does not allege that defendant engaged in any of these sorts of activities. Instead, plaintiff points to defendant's attempts to sell or license a patent in Tennessee, and to defendant's alleged contacts with patent examiners at the U.S. Patent and Trademark Office in Washington, D.C. [*see* Doc. 15; Doc. 17, ¶ 6]. The former category of contacts does not consist of "other activities" within the meaning of *Avocent*. *See Avocent Huntsville Corp.*, 552 F.3d at 1332 ("[A] defendant patentee's mere acts of . . . offering to sell . . . products . . . do not constitute such 'other activities' as will support a claim of specific personal jurisdiction over a defendant patentee."). And the latter category of contacts relates to a forum other than Tennessee. The Court thus finds that it lacks personal jurisdiction over the defendant in this case.

The Court does note that the parties executed a "Confidential Disclosure Agreement" as a condition precedent to Mr. Sullivan's trip to Knoxville [*see* Doc. 15-9]. The agreement described the purpose of the Knoxville meeting as being to "evaluat[e] the interest of [plaintiff] to engage in a transaction or enter into a relationship with [defendant] pertaining

to the Confidential Information and, if desired, to pursue such relationship or transaction . . . ." [*Id.*]. In its choice of forum provision, the agreement provides further that:

> The parties agree that this Agreement is to be construed in accordance with the laws of the State of Tennessee in the United States of America and Disclosing Party consents to the personal jurisdiction of, and agrees that exclusive jurisdiction shall reside in, all courts of the State of Tennessee and the U.S. District Court for the Eastern District of Tennessee regarding any cause of action arising under this Agreement or arising out of the subject matter relating to this Agreement.

[*Id.*]. Plaintiff argues that this provision amounts to a consent to personal jurisdiction by defendant for the purposes of the present case [*Id.*].

The Court disagrees. The parties signed this agreement with the "acknowledge[ment] that the discussions [between them] may include disclosure of information constituting secret, valuable, special, and unique property of [defendant] that has been maintained in confidence" [*Id.*]. Plaintiff now attempts to transform the choice of law provision in this agreement, which is meant to identify the forum where breaches of the confidentiality agreement would be litigated, into a jurisdictional hook for any claim whatsoever that either party might bring regarding the patents at issue in this case. The Court declines to adopt such a broad reading of this clause, particularly in light of the limited purpose of the overall agreement. *See Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008) (quoting *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985)) ("In construing a contract, the entire contract should be considered in determining the meaning of any or all of its parts . . . for one clause may modify, limit or illuminate another.").

Moreover, the sole case plaintiff cites in support of this aspect of its jurisdictional argument is readily distinguishable from the instant case. Plaintiff argues that the court in *Electronics for Imaging, Inc.* "noted the jurisdictional significance of the fact that the parties entered into a nondisclosure agreement" [*see* Doc. 15]. Plaintiff neglects to mention, however, that the "jurisdictional significance" of the nondisclosure agreement in *Electronics for Imaging, Inc.* related to the plaintiff's state law claim of non-breach of contract, rather than to the plaintiff's declaratory judgment action. *Electronics for Imaging, Inc.*, 340 F.3d at 1352-53. Thus, while "defendants' repeated communications with and solicitation of [the plaintiff's] business in [the forum], as well as the [nondisclosure agreement] itself" "establish[ed] a purposeful availment of the laws and protections of" the forum in *Electronics for Imaging, Inc.* with respect to the claim for non-breach of contract, the agreement had no bearing on whether the court could exercise personal jurisdiction over the defendants in that case with respect to the plaintiff's request for a declaratory judgment. *See Electronics for Imaging, Inc.*, 340 F.3d at 1350-53. Plaintiff has thus failed to demonstrate that the choice of forum provision in the confidentiality agreement amounts to a consent to personal jurisdiction by defendant for the purposes of the present case.

**B.     Request for Transfer**

As an alternative to its motion to dismiss for lack of personal jurisdiction, defendant has moved to transfer this case to the United States District Court for the District of New Jersey [Doc. 12]. Because the Court grants the motion to dismiss, however, the Court need not reach the transfer question.

## IV. Conclusion

For the reasons above, defendant's Motion to Dismiss, or in the Alternative, Defendant/Counter Plaintiff's Motion to Transfer [Doc. 12] will be granted. This case will be dismissed. The Clerk will be directed to close this case.

An order accompanying this memorandum opinion will be entered.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE